# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45048-8-II |
| Respondent, | |
| v. | |
| DAVID CHRISTOPHER HAVILAND, | PUBLISHED IN PART OPINION |
| Appellant. | |

SUTTON, J. — David Christopher Haviland appeals his bench trial convictions and sentences for two counts of second degree child rape, RCW 9A.44.076, and three counts of third degree child rape, RCW 9A.44.079. He argues that his second degree child rape convictions must be reversed because the bill that amended RCW 9A.44.076, Second Substitute Senate Bill 6259, 51st Leg., Reg. Sess. (Wash. 1990) (2SSB 6259), is unconstitutional. We hold that the second degree rape of a child statute codified in RCW 9A.44.076 does not violate article II, section 19's single-subject or subject-in-title requirements. In the unpublished portion of the opinion, we address and reject Haviland's remaining arguments. We affirm his convictions and sentences.

## FACTS

The State charged Haviland with two counts of second degree child rape (Counts I and II); and three counts of third degree child rape (Counts III, IV, and V). All counts included a domestic violence enhancement. After a bench trial, the trial court found Haviland guilty as charged and sentenced him to an exceptional sentence totaling 340 months. Haviland appeals his convictions and sentences.

No. 45048-8-II

ANALYSIS

Haviland argues that 2SSB 6259,[1] which amended the second degree child rape statute,[2] is unconstitutional because the bill violates the single-subject and subject-in-title requirements in article II, section 19, of the Washington State Constitution. Thus, he argues that his convictions and sentences for second degree child rape must be vacated and the charges dismissed with prejudice. Haviland's argument fails because section 903 of the bill, which specifically amended RCW 9A.44.076, does not violate the single-subject or subject-in-title requirements.

A. STANDARD OF REVIEW

We review allegations of constitutional violations de novo. *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). A defendant may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011). Courts presume that statutes are constitutional; a party challenging a "statute's constitutionality bears the heavy burden of establishing its unconstitutionality beyond a reasonable doubt." *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762, 27 P.3d 608 (2001); *see State v. Hunley*, 175 Wn.2d 901, 908, 287 P.3d 584 (2012). This standard is met when "argument and research show that there is no reasonable doubt that the statute violates the constitution." *Pierce County v. State*, 159 Wn.2d 16, 27, 148 P.3d 1002 (2006) (citing *Larson v. Seattle Popular Monorail Auth.*, 156 Wn.2d 752, 757, 131 P.3d 892 (2006)); *Amalgamated Transit*, 142 Wn.2d at 205.

_____

[1] LAWS OF 1990, ch. 3, § 903.

[2] RCW 9A.44.076

2

### B. ARTICLE II, SECTION 19

Article II, section 19 of the Washington State Constitution provides that: "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Article II, section 19 established two specific requirements: (1) the single-subject rule, and (2) the subject-in-title rule. *State v. Stannard*, 134 Wn. App. 828, 834, 142 P.3d 641 (2006) (citing *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 632, 71 P.3d 644 (2003)).

#### 1. Single-Subject Rule

Haviland argues that 2SSB 6259 violates the single-subject rule because it "covers a variety of other general topics," unrelated to second degree rape of a child and that the various subjects contained in 2SSB 6259 have no rational unity. Br. of Appellant at 11. We disagree.

Article II, section 19 prohibits a bill from embracing more than one subject. "The single-subject requirement seeks to prevent grouping of incompatible measures as well as pushing through unpopular legislation by attaching it to popular or necessary legislation." *Pierce County v. State*, 144 Wn. App. 783, 819, 185 P.3d 594 (2008).

The first step in analyzing whether the legislature violated "the single-subject requirement is to determine whether the title of the bill is general or restrictive." *State v. Alexander*, ___ Wn. App. ___, 340 P.3d 247, 250 (2014), *petition for review filed*, No. 91174-6 (Wash. Jan. 5, 2015); *see Washington Ass'n of Neigh. Stores v. State*, 149 Wn.2d 359, 368, 70 P.3d 920 (2003). "'A general title is broad, comprehensive, and generic, as opposed to a restrictive title that is specific and narrow' and 'selects a particular part of a subject as the subject of the legislation.'" *Alexander*, 340 P.3d at 250 (internal quotation marks and alteration omitted) (quoting *Pierce County*, 144 Wn. App. at 819-20). "To be considered a general title, the title need not 'contain a general statement

of the subject of an act; a few well-chosen words, suggestive of the general subject stated, is all that is necessary.'"[3] On the other hand, "restrictive titles tend to deal with issues that are subsets of an overarching subject." *Pierce County*, 144 Wn. App. at 820. If the bill has a general title, it "may constitutionally include all matters that are reasonably connected with it and all measures that may facilitate the accomplishment of the purpose stated." *Id.* at 821.

The second step in analyzing the single-subject requirement is to determine the connection between the general subject and the incidental subjects of the enactment. *Alexander*, 340 P.3d at 251; *Pierce County*, 144 Wn. App. at 821. "Where a general title is used, all that is required is rational unity between the general subject and the incidental subjects." *Amalgamated Transit*, 142 Wn.2d at 209; *see Alexander*, 340 P.3d at 251.

RCW 9A.44.076, the second degree rape of a child statute, was amended in 1990 as part of 2SSB 6259.[4] The bill is titled, "Community Protection Act": "AN ACT Relating to criminal offenders." LAWS OF 1990, ch. 3, at 12. Haviland acknowledges that the title of the bill is general.

---

[3] *Alexander*, 340 P.3d at 250-51 (alteration omitted) (quoting *Amalgamated Transit*, 142 Wn.2d at 209); *see Stannard*, 134 Wn. App. at 836. *See also Amalgamated Transit*, 142 Wn.2d at 209, 212, 216 (holding that the title "[s]hall voter approval be required for any tax increase, license tab fees be $30 per year for motor vehicles, and existing vehicle taxes be repealed" was general because, read as a whole, the title embraced the general topic of vehicle taxes); *City of Burien v. Kiga*, 144 Wn.2d 819, 825, 827, 31 P.3d 659 (2001) (holding that the title "[s]hall certain 1999 tax and fee increases be nullified, vehicles exempted from property taxes, and property tax increases (except new construction) limited to 2 [percent] annually?" was general because the entirety of the title encompassed the general subject of tax relief); *Citizens*, 149 Wn.2d at 632, 636 (holding that the title "[s]hall it be a gross misdemeanor to capture an animal with certain body-gripping traps, or to poison an animal with sodium fluoroacetate or sodium cyanide?" was general because the specific topics referenced in the title were "merely incidental to the general topic reflected in the title[—]a ban on methods of trapping and killing animals.").

[4] LAWS OF 1990, ch. 3, § 903, at 96-97.

Therefore, the question here is whether there is rational unity between the general subject and the incidental subjects. *Amalgamated Transit,* 142 Wn.2d at 209.

Haviland argues that the various subjects contained in 2SSB 6259 have no rational unity and points to the distinct "general topics" amended in 2SSB 6259: (1) "the Juvenile Justice Act," (2) "civil detention" statutes, (3) "compensation for crime victims" statutes, (4) "sex offender treatment provider" statutes, (5) "civil commitment of sexually violent predators" statutes, (6) "background check" statutes, (7) "funding and grant" statutes, and (8) statutes concerning "treatment and supervision of parents" who have abused children. Br. of Appellant at 11-12. According to Haviland, the bill violates the single-subject rule because it "covers a variety of other general topics" unrelated to second degree child rape. Br. of Appellant at 11.

2SSB 6259 amended the second degree child rape statute from a Class B felony to a Class A felony.[5] This amendment is reasonably connected to the other subjects related to criminal offenders because it creates a greater penalty for individuals who commit child rape. The subjects addressed in the bill are reasonably connected to each other (all are related to criminal offenses) and to the bill's title (criminal offenders and community protection). This bill is not like those where the Supreme Court found violations of the single-subject rule because there was no rational unity among the matters included in the act. *See e.g., Barde v. State*, 90 Wn.2d 470, 471-72, 584 P.2d 390 (1978) (where the Court held that an act that provided for criminal penalties for dognapping and the recovery of attorney's fees in some civil replevin actions lacked rational unity).

---

[5] LAWS OF 1990, ch. 3, § 903, at 96-97.

We hold that there is rational unity among the subjects in this bill. Haviland fails to prove beyond a reasonable doubt that 2SSB 6259 violated the single-subject rule and his argument fails.

## 2. Subject-in-Title Rule

Haviland also argues that 2SSB 6259 violates the subject-in-title rule because it addresses subjects not encompassed in its title. He contends that, because the bill "also amends and enacts myriad statutes relating to juvenile offenders, civil commitment, treatment providers, employee background checks, funding for community organizations, and help for crime victims," the bill violates the subject-in-title rule. Br. of Appellant at 14. He further contends that enumerating each RCW section does not cure this deficiency, and thus the entire act is unconstitutional. We disagree.

Article II, section 19 requires that a bill's title must state the subject of the bill: "No bill shall embrace more than one subject, and that shall be expressed in the title." "This provision ensures that the public has notice of the [bill's] contents." *Stannard*, 134 Wn. App. at 841 (citing *Citizens*, 149 Wn.2d at 639). "This requirement is satisfied if the title of the act gives notice that would lead to an inquiry into the body of the act or indicates the scope and purpose of the law to an inquiring mind." *Pierce County*, 144 Wn. App. at 822. A title does not need to provide details or an exhaustive index. *Id.* "Any objections to a title must be grave, and the conflict between it and the constitution palpable, before we will hold an act unconstitutional for violating the subject-in-title requirement." *Pierce County*, 144 Wn. App. at 822.

2SSB 6259, which amends RCW 9A.44.076, is titled "Community Protection Act": "AN ACT Relating to criminal offenders." LAWS OF 1990, ch. 3, at 12. The title plainly notifies readers that the bill's contents relate to criminal offenders, and the bill enumerates the statutes it amends,

No. 45048-8-II

specifically stating that it amends RCW 9A.44.076, the statute criminalizing second degree child rape. LAWS OF 1990, ch. 3, at 12. All sections of the bill relate to the unified purpose of addressing criminal offenders at all stages of the process.[6] We hold that 2SSB 6259 does not violate Washington Constitution article II, section 19's single-subject or subject-in-title requirements.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

---

[6] But even if we were to hold that any of the bill's sections violate Washington Constitution article II, section 19, this would not render the entire act invalid because invalid provisions may be severable.

> A legislative act is not unconstitutional in its entirety unless invalid provisions are unseverable and it cannot be reasonably be believed that the legislative body would have passed one without the other, or unless elimination of the invalid part would render the remaining part useless to accomplish the legislative purposes.

*Amalgamated Transit*, 142 Wn.2d at 227-28.

Thus, Haviland's argument also fails because section 903 of the bill, which specifically amended RCW 9A.44.076, does not violate the single-subject or subject-in-title requirements. The amended section provides:

> (1) A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.
>
> (2) Rape of a child in the second degree is a class A felony.

LAWS OF 1990, ch. 3, § 903, at 96-97.

The plain language of section 903 relates to "criminal offenders" and sexual violence, which also relate to the title and subject of 2SSB 6259. Thus, section 903 does not violate Washington Constitution article II, section 19.

7

Haviland also argues that (1) the trial court erred by admitting testimony from the victim's friend and (2) his jury trial waiver was not valid. He also raises several issues in his Statement of Additional Grounds (SAG). We reject these arguments.

ADDITIONAL FACTS

I. SEXUAL ABUSE

David Christopher Haviland, R.H.'s[7] father, began raping R.H. when she was about 13 years old. Before the first incident, R.H. and her friend, S.B., went to the outbuilding/shop on Haviland's property to ask Haviland for chewing tobacco. Haviland told R.H. and S.B. that "[they] would have to work for it." 2 Verbatim Report of Proceedings (VRP) at 14, 72. Haviland told S.B. to watch the door, and directed R.H. to a back room in the shop. Haviland then raped R.H. and ejaculated on the floor of the shop. He then called S.B. into the back room of the shop and made S.B. watch as he masturbated. Haviland raped R.H. on multiple occasions when she was 13 to 14 years old. The last sexual assault occurred in 2011.

In November 2012, R.H. told her mother about the abuse. The mother confronted Haviland about R.H.'s allegations, and he responded, "[I]t wasn't that bad" and that "it was only like one time." 1 VRP at 85-86.

---

[7] According to Division II's General Order 2011-1, we use initials to protect the juveniles' privacy.

## II. PROCEDURAL HISTORY

The State charged Haviland with two counts of second degree child rape-domestic violence (counts I and II); and three counts of third degree child rape-domestic violence (counts III, IV, and V).[8] The trial court held a hearing on the State's motion to admit evidence, allowing the State to introduce testimony from S.B. regarding her presence during the first instance of sexual abuse by Haviland against R.H., after which the court entered findings of fact and conclusions of law.

Haviland presented the trial court with a written waiver of a jury trial, signed by him and his attorney. The trial court conducted a colloquy with Haviland to discuss the jury trial waiver and confirmed that Haviland understood his waiver; after which the judge signed the waiver.

After the bench trial, the trial court found Haviland guilty as charged,[9] and sentenced him to an exceptional sentence on the third degree child rape-domestic violence (count V) totaling 340 months, consisting of concurrent 280-month sentences each on counts I and II, and concurrent 60-month sentences each on counts III, IV, and V, with his 60-month sentences to be served consecutively to his 280-month sentences. The trial court stated that it made this decision because some of Haviland's current offenses would go unpunished due to his high offender score. Haviland appealed his convictions and exceptional sentence.

---

[8] These charges all related to R.H., not S.B.

[9] Second degree child rape-domestic violence (counts I and II) and third degree child rape-domestic violence (counts III, IV, and V).

ANALYSIS

I. ADMISSIBILITY OF EVIDENCE

Haviland argues that the trial court improperly admitted S.B.'s testimony because it was propensity evidence and used it to convict him, in violation of his due process rights under the Fourteenth Amendment to the United States Constitution. He argues that the trial court erred in admitting S.B.'s testimony under ER 401 and 402 that Haviland engaged in sexual misconduct with S.B. on the day of his first offense against R.H.. He also asserts that the trial court applied the wrong legal standard and, alternatively, admitted the evidence under two ER 404(b) exceptions (res gestae and common scheme or plan) that do not apply.

We review a trial court's interpretation of an evidentiary rule de novo. *State v. Gresham*, 173 Wn.2d 405, 419, 269 P.3d 207 (2012). If the trial court interpreted the rule correctly, then we review the trial court's ruling for an abuse of discretion. *Gresham*, 173 Wn.2d at 419. A trial court abuses its discretion when it makes a decision that is "'manifestly unreasonable or based on untenable grounds.'" *State v. Depaz*, 165 Wn.2d 842, 858, 204 P.3d 217 (2009) (quoting *State v. Quismundo*, 164 Wn.2d 499, 504, 192 P.3d 342 (2008)).

"We leave credibility determinations to the trier of fact" and do not review them on appeal. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012), *cert. denied*, 135 S. Ct. 153 (2014). We "can affirm the trial court's rulings on any grounds the record and the law support." *Grier*, 168 Wn. App. at 644. If we hold that a trial court's evidentiary ruling is erroneous, we then determine if that ruling was prejudicial. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An error is prejudicial if "'within reasonable probabilities, the outcome of the trial would

have been materially affected had the error not occurred.'" *Bourgeois*, 133 Wn.2d at 403 (quoting

*State v. Tharp*, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

S.B.'s testimony was relevant under ER 401 and admissible under ER 402, and admissible

under a "common scheme or plan" exception under ER 404(b). The trial court did not abuse its

discretion in admitting S.B.'s testimony on these grounds.

### A. Relevant Evidence

The trial court admitted S.B.'s testimony that Haviland engaged in sexual misconduct with

S.B. on the day of the first alleged offense against R.H. The trial court ruled that this evidence

was relevant under ER 401 and 402 as part of the events leading up to and culminating in the

sexual offense against R.H. The trial court concluded that S.B.'s testimony was relevant evidence

and could

> properly be offered by the State to corroborate allegations of sexual abuse against
> [R.H.] because [S.B.'s] observations [were] so close in time and space to the alleged
> sexual abuse that they [did] not constitute prior bad acts and [were] instead simply
> corroborative observations of sexual misconduct generally.

Clerk's Papers (CP) at 3 (Conclusion of Law (CL) 2.5).

We hold that the evidence was relevant to show the context for Haviland's course of action,

his method of concealing his misconduct, and the entirety of his criminal scheme. S.B.'s testimony

made the existence of Haviland's misconduct against R.H. in the outbuilding/shop more probable

than it would have been without S.B.'s statements. Accordingly, it was relevant under ER 401

and admissible under ER 402, subject to a proper ER 403 balancing test which the trial court

conducted.

## B. ER 404(b)

### 1. Evidence of other crimes, wrongs, or acts

Haviland challenges the trial court's evidentiary ruling that S.B.'s testimony was admissible under ER 404(b) as evidence under a "common scheme or plan." CP at 3 (CL 2.7). He argues that S.B.'s testimony was not admissible under ER 404(b) to show a "common scheme or plan" because the acts described in her testimony were unlike those alleged by R.H. Br. of Appellant at 19 (citing 1 VRP at 15-31, 74-75). The State argues that the trial court properly admitted the evidence (1) under ER 401 and 402; or alternatively, (2) S.B.'s testimony was properly admitted under a "common scheme or plan" exception under ER 404(b), and (3) the trial court conducted a proper ER 403 balancing test before admitting the evidence. We hold that the trial court properly admitted S.B.'s testimony under ER 401 and 402 and also under a "common scheme or plan" exception under ER 404(b).

Although ER 404(b) generally prohibits "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith," evidence of misconduct or other crimes is admissible when it "complete[s] the crime story." ER 404(b); *State v. Hughes,* 118 Wn. App. 713, 725, 77 P.3d 681 (2003); *see State v. Mutchler,* 53 Wn. App. 898, 901, 771 P.2d 1168 (1989). Such evidence must compose "inseparable parts of the whole deed or criminal scheme." *Mutchler,* 53 Wn. App. at 901. The evidence remains inadmissible to show that the accused has acted in conformity with his or her alleged bad character. *Mutchler,* 53 Wn. App. at 901.

But misconduct evidence is admissible to demonstrate a "common scheme or plan" where (1) "'several crimes constitute constituent parts of a plan in which each crime is but a piece of the

larger plan,'" or (2) "'an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" *Gresham*, 173 Wn.2d at 421-22 (quoting *State v. Lough*, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)). Prior to admitting ER 404(b) evidence, a trial court must conduct a four-part test. *State v. Gunderson*, 181 Wn.2d 916, 337 P.3d 1090, 1093 (2014). The trial court must:

> "(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect."

*Gunderson*, 181 Wn.2d at 1094 (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

The trial court found that S.B.'s testimony of Haviland's misconduct at the outbuilding/shop corroborated "sexual misconduct generally" and was "admissible to show a 'common scheme or plan.'"[10] CP at 2-3 (CL 2.4, 2.5, 2.7). We agree that the evidence is admissible, but not under a res gestae exception as the trial court concluded, but rather under a "common scheme or plan" exception under ER 404(b). Because the instances of misconduct against S.B. and R.H. were so similar in time, place, and action, we hold that S.B.'s testimony made the existence of Haviland's misconduct against R.H. in the outbuilding/shop more probable

---

[10] The trial court found that S.B.'s testimony that she went to the outbuilding/shop, was told to act as a lookout, then was called into the room where Haviland had sexually assaulted R.H., and Haviland masturbated in front of S.B., was relevant under ER 401 and admissible under ER 402 and did not implicate a prior bad act because the acts were so close in time and space. The trial court also ruled that, even if S.B.'s testimony could be considered ER 404(b) evidence, it was "still admissible as res gestae evidence, as a "common scheme or plan" evidence, and any prejudice is far outweighed by the probative value of the evidence." CP at 3 (CL 2.7).

than it would have been without S.B.'s statements; accordingly, the trial court properly admitted S.B.'s testimony as relevant evidence under ER 401 and 402 and under a "common scheme or plan" exception under ER 404(b).

## 2. ER 403

Haviland also argues that S.B.'s testimony unfairly prejudiced him under ER 403 and should have been excluded. Because a trial court has considerable discretion in determining whether the probative value of evidence is outweighed by its potential prejudice, we will find reversible error "only in the exceptional circumstance of a manifest abuse of discretion." *Carson v. Fine*, 123 Wn.2d 206, 226, 867 P.2d 610 (1994). We presume that a trial court considers evidence only for its proper purpose, and the danger of prejudice is reduced in a bench trial. *State v. Gower*, 179 Wn.2d 851, 855-56, 321 P.3d 1178 (2014); *State v. Jenkins*, 53 Wn. App. 228, 236-37, 766 P.2d 499 (1989).

After conducting a balancing test, the trial court ruled that S.B.'s testimony would be introduced to corroborate R.H.'s version of events on the day of R.H.'s rape, and thus was relevant to proving the elements of child rape. The trial court concluded that "any prejudice [from S.B.'s testimony was] far outweighed by the probative value of the evidence." CP at 3 (CL 2.7). Although the testimony prejudiced Haviland, it was not unfairly prejudicial when balanced against the highly probative nature of showing Haviland's actions and his scheme for committing sexual misconduct against R.H. We hold that the trial court did not abuse its discretion in concluding that the evidence was relevant under ER 401, admissible under ER 402, and not unduly prejudicial under ER 403.

14

## II. JURY TRIAL WAIVER

Haviland next argues that the trial court erred by accepting his jury trial waiver without first affirmatively establishing that Haviland understood all of his rights under article I, sections 21 and 22 of the Washington Constitution. He also argues that a felony criminal defendant cannot waive his or her constitutional right to a jury trial. We disagree.

A criminal defendant has a constitutional right to a trial by jury. U.S. CONST. amend. VI; WASH. CONST. art. I, §§ 21, 22; *see State v. Williams-Walker*, 167 Wn.2d 889, 896, 225 P.3d 913 (2010). The Washington State Constitution's jury trial right is broader than the federal constitution's jury trial right. *State v. Pierce*, 134 Wn. App. 763, 770, 142 P.3d 610 (2006). Article I, section 21 of the Washington State Constitution states that the "right of trial by jury shall remain inviolate." Haviland appears to read this phrase to mean that a person can never waive a jury trial when facing a felony charge. Haviland contends that jury waivers in felony cases violate article I, sections 21 and 22 of the Washington Constitution.[11]

Haviland is incorrect; a defendant can waive his or her right to a jury trial: "'The obligation of the state is to assure a trial by a jury of twelve in a criminal case, and not to insist that an accused, against his expressed desire, submit his cause to such a jury.'" *State v. Stegall*, 124 Wn.2d 719,

---

[11] Section 21 provides:
> TRIAL BY JURY. The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.

Section 22 provides, in part: "RIGHTS OF THE ACCUSED. In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, . . . to have a speedy public trial by an impartial jury."

724, 881 P.2d 979 (1994) (alteration omitted) (quoting *State v. Lane*, 40 Wn.2d 734, 737, 246 P.2d 474 (1952)). A felony defendant can validly waive his or her jury trial right as long as the defendant "'acts intelligently, voluntarily, [and] free from improper influences.'" *Stegall*, 124 Wn.2d at 725 (quoting *Lane*, 40 Wn.2d at 737) (alteration in original). And we recently held that "Washington law allows a defendant to waive a jury trial," subject to a knowing, intentional, and voluntary waiver. *State v. Benitez*, 175 Wn. App. 116, 127, 302 P.3d 877 (2013).

Haviland argues alternatively that his waiver in this case was not "'voluntary, knowing, and intelligent.'" Br. of Appellant at 36, 38 (quoting *State v. Hos*, 154 Wn. App. 238, 250, 225 P.3d 389 (2010)). A defendant may waive a jury trial orally or by filing a written waiver. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 240, 165 P.3d 391 (2007); *State v. Donahue*, 76 Wn. App. 695, 697, 887 P.2d 485 (1995); CrR 6.1(a). Compliance with CrR 6.1(a)[12] constitutes strong evidence of a validly waived right. *Benitez*, 175 Wn. App. at 128; *Pierce*, 134 Wn. App. at 771. The record shows that Haviland signed a written jury trial waiver.[13] And the trial court engaged in an extensive colloquy with Haviland about his right to a jury trial after receiving Haviland's

---

[12] CrR 6.1(a) requires criminal cases to be tried by a jury "unless the defendant files a written waiver of a jury trial, and has consent of the court."

[13] The waiver stated:
> I am the defendant in the above named case and acknowledge that I have been informed of my right to a jury trial in my case, and I understand that I may waive this right. I have fully discussed this waiver with my attorney and I want to waive my right to a jury trial in this matter.
> **I UNDERSTAND THAT I HAVE A RIGHT TO A JURY TRIAL AND I HEREBY WAIVE MY RIGHT TO A JURY TRIAL, AND ASK THAT MY CASE BE TRIED BEFORE A JUDGE WITHOUT A JURY.**

Suppl. CP at 88.

No. 45048-8-II

written waiver, during which Haviland acknowledged the rights he forfeited and the risks he acquired by submitting his waiver.[14] The trial court accepted his waiver. We hold that Haviland

---

[14] The trial court conducted the following colloquy with Haviland:

THE COURT: Mr. Haviland, I've been handed a waiver of jury trial in this matter. And again, just so we're clear, we're dealing with the original information, the original five count information.

[PROSECUTOR]: Yes.

THE COURT: So Mr. Haviland, you understand that you have a right to a jury trial, to have this matter tried to a jury of 12 people?

MR. HAVILAND: Yes, Your Honor.

THE COURT: Do you understand that by signing this waiver of jury trial, you're giving that up and you're agreeing that I would decide this case?

MR. HAVILAND: Yes, sir.

THE COURT: Do you understand that there can be some real advantages to having this tried as a jury trial as opposed to a bench trial?

MR. HAVILAND: Yes, sir, I do.

THE COURT: You understand that in order for the State to obtain a conviction with a jury trial they have to convince all 12 people beyond a reasonable doubt that you're guilty of each of the charges? Do you understand that?

MR. HAVILAND: Yes, sir.

THE COURT: Do you understand that if you give that right up, then it's just tried to me and they only have to convince one person?

MR. HAVILAND: Yes, Your Honor.

THE COURT: You understand that difference?

MR. HAVILAND: Yes.

THE COURT: All right. Have you been threatened or pressured in any way to sign this waiver?

MR. HAVILAND: No, sir.

THE COURT: All right. This is something that you're doing voluntarily?

MR. HAVILAND: Yes, sir.

THE COURT: Do you feel like you have had sufficient time to talk to [defense counsel] to weigh all of the pros and the cons in this?

MR. HAVILAND: Yes, sir.

THE COURT: You're sure this is what you want to do?

MR. HAVILAND: Yes.

VRP (May 3, 2013) at 25-27.

17

voluntarily, knowingly, and intelligently waived his jury trial right in writing. *Hos*, 154 Wn. App. at 249. Accordingly, this argument fails.

### III. SAG ARGUMENTS

Haviland also raises several additional grounds for review. He contends that the trial court (1) erred by imposing an exceptional sentence based upon his offender score; (2) erred when it allowed the State to present an argument that Haviland was the source of a sexually transmitted disease; (3) erred when it allowed testimony from the State's witnesses after becoming aware that the child's advocate had communicated in-court witness testimony to State witnesses that had yet to testify; and (4) committed "plain error" when it convicted him and imposed an exceptional sentence. SAG at 8.

### A. Exceptional Sentence

Haviland first contends that the trial court improperly imposed an exceptional sentence based upon the "'Free Crimes' concept" by ordering him to serve his sentence on third degree child rape (count V) consecutive to his sentences on his other counts. SAG at 1 But the trial court imposed an exceptional sentence based on aggravating factors found by the court after Haviland waived a jury trial. Under RCW 9.94A.535, the trial court entered written findings of fact, stating that "[t]here are substantial and compelling reasons to impose an exceptional sentence"; specifically, that Haviland "committed multiple current offenses and [his] high offender score results in some of the current offenses going unpunished." CP at 25 (citing RCW 9.94A.535(2)(c)).

"Generally, a trial court must impose a sentence within the standard range." *State v. Law*,

154 Wn.2d 85, 94, 110 P.3d 717 (2005); *see* RCW 9.94A.505(2)(a)(i). But the Sentencing Reform Act, chapter 9.94A RCW, permits departures from the standard range if the sentencing court "'finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.'" *Law*, 154 Wn.2d at 94 (quoting former RCW 9.94A.120(2) (2000), *recodified as* RCW 9.94A.535).

To reverse an exceptional sentence, we must find: (1) "under a clearly erroneous standard," insufficient evidence in the record supports the sentencing court's "reasons for imposing an exceptional sentence; (2) under a de novo standard," the sentencing court's reasons "do not justify a departure from the standard range; or (3) under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient." *State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013), *review denied*, 179 Wn.2d 1015 (2014). Because Haviland challenges the trial court's reasons for imposing an exceptional sentence, we review the exceptional sentence de novo. *France*, 176 Wn. App. at 469.

RCW 9.94A.535(2) sets forth aggravating factors that a court may consider when imposing an exceptional sentence upwards outside the scope of the standard range. *Law*, 154 Wn.2d at 95 n.6. The statute provides that "[t]he trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances: . . . (c) The defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2). Thus, the trial court made an appropriate written finding of fact justifying its departure from the standard range. RCW 9.94A.535(2)(c). We reject Haviland's assertion and affirm his exceptional sentence.

## B. Sexually Transmitted Disease

Haviland next contends that the trial court erred when it allowed the State to argue or "infer" during cross-examination that he transmitted chlamydia, a sexually transmitted disease, to R.H., the victim. SAG at 4. He contends that the trial court (1) violated his "Sixth Amendment 'right to confront'" because he never had an opportunity to object to the State's allegations, and (2) violated the rules of evidence by admitting statements by S.B. that were more prejudicial than probative. SAG at 4.

At trial, the State presented evidence that Haviland was infected with chlamydia at the time that he had sex with R.H. and that he gave chlamydia to R.H.. Haviland did not object to this evidence; rather, at trial he attempted to rebut the State's argument by alleging that R.H. was sexually promiscuous in the community. By failing to object at trial, Haviland waives this issue on appeal. *In re Det. of Post*, 145 Wn. App. 728, 755-56, 187 P.3d 803 (2008) (a party who fails to object to the admissibility of evidence may not raise the issue on appeal).

## C. Witness Tampering

Haviland next contends that the trial court erred when it allowed testimony from State witnesses that he alleges were "tampered" by another State witness, the child advocate. SAG at 6. He refers to an incident during trial where some of the testimony was communicated to State witnesses. He relies on the following colloquy during trial:

> [COURT]: There's one other thing I wanted to address. Some of the witnesses that I had yesterday told me—they're sitting out in the hallway—that some man in the courtroom yesterday was getting up, leaving and going and telling the state's witnesses what the testimony is. So I brought this to the prosecutor's attention, but that obviously needs to stop if it is going on.
> [PROSECUTOR]: I wasn't aware of it. I agree it would need to stop. Thankfully there were no State witnesses yesterday. But I will address that with them.

No. 45048-8-II

3 VRP at 216.

Haviland did not object at trial or request any corrective action by the trial court. Because he failed to object at trial, Haviland has waived this issue on appeal. *Post*, 145 Wn. App. at 755-56.

### D. Plain Error

Finally, Haviland contends that each of the three arguments he raised in his SAG constitute "plain error," and therefore, we may review these arguments for the first time on appeal. SAG at 8. He cites federal case law for this rule, but the substance of his argument appears to rely on RAP 2.5(a), which permits the appellate court to review a "manifest error affecting a constitutional right" for the first time on appeal. *See* SAG at 8. Because none of Haviland's SAG assertions demonstrate that the trial court committed error, we reject them and affirm his convictions and sentences.

We affirm Haviland's convictions for second degree and third degree child rape, as well as his exceptional sentence.

Sutton, J.

We concur:

Worswick, P.J.

Lee, J.

21