# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46696-1-II |
| Respondent, | |
| v. | |
| JEREMY P. BAKKE, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Jeremy Bakke appeals his convictions for assault in the third degree, possession of methamphetamine, and possession of stolen property in the third degree, arguing that the trial court accepted an invalid waiver of his right to a jury trial and violated his Fourteenth Amendment right to due process because he stood trial in shackles without a hearing. He also argues that the trial court erred by imposing LFOs without conducting an individualized inquiry. In his Statement of Additional Grounds (SAG), Bakke asserts insufficient evidence supported his assault in the third degree conviction. Because Bakke waived his right to a jury trial, the trial court committed harmless error by not conducting a hearing on Bakke being restrained during trial, and because sufficient evidence supports his assault in the third degree conviction, we affirm the trial court. We also exercise our discretion and decline to consider Bakke's LFO argument because he did not preserve the issue for appeal.

## FACTS

During the evening of November 29, 2013, police officers approached Bakke after receiving a call to search the area for a suspect connected to an "auto prowl." Report of Proceedings (RP) (July 21, 2014) at 157. The victim reported items missing from her car,

including her purse and phone. She also described a car she saw leaving the scene. Officer Tom Topaum approached the driver's side of a car that matched the description the victim provided, tapped on the window, and ordered Bakke to show his hands. After Topaum's repeated instructions, Bakke exited the car and was handcuffed. The police arrested Bakke on outstanding warrants.

Bakke became "very upset" when the officers told him he was under arrest. RP (July 21, 2014) at 198. Topaum stated that Bakke screamed, yelled, cussed, and failed to obey police orders. The officers started to put Bakke in the patrol car. Topaum grabbed Bakke's shoulder and head and pushed him down into the backseat. Bakke sat back, lifted his right foot up, and kicked toward Topaum, kicking the officer in the right arm. Topaum stated that Bakke kicked him so hard that the force pushed him two or three steps backwards. Topaum felt his arm dislocate. Officer Janell Cusick, who witnessed the incident, said she saw Topaum grab his arm and back away while another officer closed the patrol car door. Topaum stated he thought Bakke was trying to kick him a second time.

Topaum realized at the time that he should have the injury checked out, but he did not seek medical attention. He felt like the arm had "popped back in." RP (July 21, 2014) at 195. He finished his shift and did not take any pictures of his arm.

Topaum found a phone on Bakke's person. Another officer collected an earring and a tube of eyeliner from a search of the car, which the victim identified as her own. The same officer also found methamphetamine in the trunk of the car.

The State charged Bakke by information with assault in the third degree, unlawful possession of methamphetamine, and possession of stolen property in the third degree.

Prior to trial, Bakke waived his right to a jury trial. The waiver form lists his charges in paragraph 1. Paragraph 2 states:

> I have been informed and fully understand that in a jury trial I have the following rights:
> (a) The right to remain silent before and during trial, and the right to refuse to testify against myself;
> (b) The right at trial to hear and question the witnesses who testify against me;
> (c) The right at trial to testify and to have witnesses testify for me. These witnesses can be made to appear at no expense to me;
> (d) The right to appeal the jury's verdict.

Supplemental Clerk's Papers (Suppl. CP) at 74. The waiver also included paragraph 3 that states, "I freely and voluntarily waive my right to a jury trial. No one has threatened harm of any kind to me or to any other person and no one has made promises of any kind to cause me to make this waiver." Suppl. CP at 74-75. Paragraph 4 states, "[t]he court without a jury will consider the factual basis of the charges listed in paragraph 1. The court will decide whether the facts provide substantial and compelling reasons to find me guilty of the charges listed in paragraph 1." Suppl. CP at 75. Bakke and his lawyer signed the waiver. Above the defense attorney's signature, the waiver states, "I have read and discussed this Waiver of Jury Trial on Aggravating Circumstances with the defendant and believe that the defendant is competent and fully understands the waiver." Suppl. CP at 75.

When counsel handed the waiver forward, the court engaged in a colloquy with Bakke about his knowledge of the right to a jury trial and his intent to waive the right. The court read through the form on the record and asked Bakke if he understood the charges against him and his rights. Bakke answered that he understood the charges and wished to waive his right. The court then said, "[Y]ou have a constitutional right to have a jury trial and that would be a jury of 12 persons who would be selected at random from the community and examined by the attorneys to

3

determine that they would be fair and impartial." RP (July 17, 2014) at 5. The court went on to ask, "[D]o you wish to waive that right and to proceed to a trial solely decided by the judge?" RP (July 17, 2014) at 5. Bakke stated that he understood his right and wished to waive it. The State objected to Bakke waiving a jury trial and the court noted the objection. The court accepted Bakke's waiver.

Before opening statements, Bakke's lawyer advised the court that her client was "asking that he be unshackled so that he [could] take notes during his own trial and participate." RP (July 21, 2014) at 76. The State argued that Bakke should be kept in restraints because one of the charges was assault on a police officer, the judge already knew that Bakke was in custody, and it would not inhibit Bakke's ability to take notes. Bakke's attorney stated in response, "He doesn't have any objection to being shackled," and clarified that the request was only to remove the handcuffs. RP (July 21, 2014) at 77. The court ruled,

> At this point in time, I do believe it's an officer safety issue. Also, with respect to the fact that I know he's in custody, it doesn't affect me one way or the other. I'm as impartial as they come, so it's not an issue with me. He can take notes while he's restrained with the handcuffs. I'll allow him additional breaks if we need to take a break so that he can kind of relax his hands for a little bit. I don't mind a l0-minute break every hour or so—a five-minute break every hour or so not a problem with me. I'll accommodate.

RP (July 21, 2014) at 77-78.

Bakke remained in restraints throughout the bench trial with seemingly one exception. During Bakke's testimony, his lawyer requested that Bakke be unshackled and the handcuffs moved to behind his back so he could demonstrate the officers putting him in the patrol car. Although the record is unclear, it appears the request was granted because Bakke was able to lie down on the courtroom floor and demonstrate his physical conduct when he was put in the patrol car.

4

Bakke stated he did kick his feet to get back up but did not remember making contact with Topaum. He also admitted during his testimony that the phone and some other property the officers found in Bakke's possession were not his own, and that the methamphetamine in the car was his.

The trial court found Bakke guilty on all counts. At sentencing, the court followed the agreed sentencing recommendation: 54 months' confinement with credit for time served on count I and 14 months' confinement and 12 months' community custody for count II. The court suspended the time for count III. The court also found Bakke to be indigent and waived the attorney fee. It ordered Bakke to pay $1,300 in LFOs, $800 of which were mandatory fees. Bakke did not object to the imposition of the fees. He appeals his convictions and LFOs.

ANALYSIS

I.    RIGHT TO A JURY TRIAL

Bakke argues that the trial court violated his right to a jury trial because he did not enter a valid waiver of the right. We disagree.

A.    Standard of Review

We review the validity of a defendant's jury trial waiver de novo. *State v. Ramirez–Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). A criminal defendant in superior court has the constitutional right to a jury trial. WASH. CONST. art. 1, § 21; CrR 6.1(b); *State v. Stegall*, 124 Wn.2d 719, 723, 881 P.2d 979 (1994). However, a criminal defendant may waive this right, as long as the waiver is voluntary, knowing, and intelligent. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). "The waiver must either be in writing, or done orally on the record." *State v. Treat*, 109 Wn. App. 419, 427, 35 P.3d 1192 (2001). A colloquy or on-the-record advice of the waiver's consequences is not required so long as the waiver is a "personal expression"

5

from the defendant; a waiver by defendant's lawyer on the defendant's behalf is not sufficient. *Stegall*, 124 Wn.2d at 725; *State v. Wicke*, 91 Wn.2d 638, 644, 591 P.2d 452 (1979).

The State bears the burden of establishing the validity of the defendant's jury trial waiver, and we indulge every reasonable presumption against such waiver, absent a sufficient record. *State v. Hos*, 154 Wn. App. 238, 249-50, 225 P.3d 389 (2010). "The validity of any waiver of a constitutional right, as well as the inquiry required by the court to establish waiver, [depends] on the circumstances of each case, including the defendant's experience and capabilities." *Stegall*, 124 Wn.2d at 725. We do not require that a defendant "be apprised of every aspect of the jury trial right in order for the defendant's waiver to be valid." *State v. Benitez*, 175 Wn. App. 116, 129, 302 P.3d 877 (2013).

Errors of constitutional magnitude that are harmless beyond a reasonable doubt do not require reversal. *See State v. Deal*, 128 Wn.2d 693, 703, 911 P.2d 996 (1996). CrR 6.1(a) requires the defendant's jury trial waiver to be in writing. However, CrR 6.1(a) is not a constitutional requirement; "[t]hus, failure to comply with CrR 6.1(a)'s writing requirements does not warrant reversal where the record is otherwise sufficient to show a valid waiver under the rule." *Hos*, 154 Wn. App. at 250.

B.      Valid Waiver

Bakke argues that his waiver was not knowing, intelligent and voluntary because he did not fill out the correct jury trial waiver form and he did not understand his right. He contends that the waiver form did not inform him of his right to a jury of 12 impartial jurors who must return a unanimous verdict, of his right to participate in jury selection, or that the judge alone would decide his case.

Bakke is correct that some of the language on the waiver form was not tailored to a waiver of a jury trial; however, for the most part it did inform Bakke of his right. The form stated, "I have been informed and fully understand that in a jury trial I have the following rights." Suppl. CP at 74-75. It enumerated the rights to remain silent, to testify, to hear and challenge witnesses, to call witnesses, and to appeal. But, it also included language stating, "I freely and voluntarily waive my right to a jury trial," as well as, "The court without a jury will consider the factual basis of the charges listed in paragraph 1. The court will decide whether the facts provide substantial and compelling reasons to find me guilty of the charges listed in paragraph 1." Suppl. CP at 74-75. Therefore, Bakke did acknowledge in writing his waiver and that he would be tried by a judge, not a jury. The waiver does not need to articulate every right included in the right to a jury. *See Benitez*, 175 Wn. App. at 129. We conclude that the written waiver form satisfied CrR 6.1.

Bakke also contends that his attorney's signature indicating she reviewed the waiver with him does not save the waiver. Because the written waiver was valid, we do not decide this issue.

Bakke argues that the colloquy between himself and the trial court did not "clarify or correct" his understanding of the right. Br. of Appellant at 7. We disagree. To satisfy the constitutional requirement, a waiver of the right to a jury trial can be written or oral. *Treat*, 109 Wn. App. at 427. Here, the record is sufficient to show Bakke's oral waiver was also valid. When coupled with the written waiver, it is clear that Bakke understood his right to a jury trial and waived it. Unlike the court in *Hos*, where the trial court neither received a written waiver nor questioned the defendant on the record to determine whether she understood her right or whether she had discussed the waiver with her counsel, 154 Wn. App. at 252, the court here engaged in a colloquy with Bakke that explained his rights to him and included more information than that contained on the waiver form.

7

During the colloquy, the judge read through the form and asked Bakke if he understood the charges against him and the right to a jury. Bakke answered that he did understand the charges and wished to waive. The court then said, "[Y]ou have a constitutional right to have a jury trial and that would be a jury of 12 persons who would be selected at random from the community and examined by the attorneys to determine that they would be fair and impartial." RP (July 17, 2014) at 5. The court further asked Bakke, "[D]o you wish to waive that right and to proceed to a trial solely decided by the judge?" RP (July 17, 2014) at 5. Bakke stated that he understood and wanted to waive his right. Only then did the court accept the waiver. The colloquy provided all the information that Bakke required to make a knowing, intelligent, and voluntary waiver. *See Benitez*, 175 Wn. App. at 129. We conclude that Bakke's oral waiver of a jury trial, on top of the written waiver, satisfied the constitutional standard.

II.     RIGHT TO DUE PROCESS

Bakke argues that the trial court violated his due process right by trying him in restraints without first holding a hearing. We agree that the court erred but conclude that the error was harmless.

A.     Standard of Review

Washington courts have long recognized that a prisoner is entitled to be brought into the presence of the court free from restraints. *See State v. Williams*, 18 Wash. 47, 50, 50 P. 580 (1897). We review a trial court's decision to shackle a defendant for abuse of discretion. *State v. Turner*, 143 Wn.2d 715, 724, 23 P.3d 499 (2001); *State v. Walker*, 185 Wn. App. 790, 803, 344 P.3d 227, *review denied*, 183 Wn.2d 1025 (2015). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *Turner*, 143 Wn.2d at 724. A discretionary

decision rests on untenable grounds if it is unsupported by the facts in the record. *Walker*, 185 Wn. App. at 800.

"'It is fundamental that a trial court is vested with the discretion to provide for courtroom security, in order to ensure the safety of court officers, parties, and the public.'" *Turner*, 143 Wn.2d at 725 (quoting *State v. Hartzog*, 96 Wn.2d 383, 396, 635 P.2d 694 (1981)). At the same time, a criminal defendant is entitled to be free from restraints at trial except under extraordinary circumstances. *State v. E.J.Y.*, 113 Wn. App. 940, 951, 55 P.3d 673 (2002). Restraints are disfavored because they may abridge important constitutional rights such as, the presumption of innocence, the privilege of testifying on one's own behalf, and the right to consult with and assist counsel during trial. *Turner*, 143 Wn.2d at 725; *State v. Finch*, 137 Wn.2d 792, 845, 975 P.2d 967 (1999). By keeping the defendant in restraints, the court might deprive him of the full use of all his faculties. *State v. Damon*, 144 Wn.2d 686, 691, 25 P.3d 418 (2001).

Only after conducting a hearing and entering sufficient findings into the record should a trial court allow the use of restraints. *Damon*, 144 Wn.2d at 691-92. The court must also consider less restrictive alternatives. *Finch*, 137 Wn.2d at 850. The trial court "'must exercise discretion in determining the extent to which courtroom security measures are necessary to maintain order and prevent injury. That discretion must be founded upon a factual basis set forth in the record.'" *E.J.Y.*, 113 Wn. App. at 951 (quoting *Hartzog*, 96 Wn.2d at 400). The trial court abuses its discretion unless the basis for its decision is evidence that indicates the defendant poses an imminent risk of escape, the defendant intends to injure someone in the courtroom, or the defendant cannot behave in an orderly manner while in the courtroom. *Finch*, 137 Wn.2d at 850. "'A broad general policy of imposing physical restraints . . . because [the defendant] may be

potentially dangerous is a failure to exercise discretion.'" *Finch*, 137 Wn.2d at 846 (quoting *Hartzog*, 96 Wn.2d at 400) (internal quotations omitted).

The trial court commits constitutional error where it orders that the defendant be restrained without balancing or analyzing the need to restrain the defendant. *State v. Clark*, 143 Wn.2d 731, 775, 24 P.3d 1006 (2001). "A claim of unconstitutional shackling is subject to harmless error analysis." *State v. Hutchinson*, 135 Wn.2d 863, 888, 959 P.2d 1061 (1998). The "error does not require reversal unless it is shown that the use of restraints substantially affected the trial court's fact finding." *E.J.Y.*, 113 Wn. App. at 952. Further, the likelihood of prejudice is significantly reduced in a proceeding without a jury. *E.J.Y.*, 113 Wn. App. at 952.

"Bench trials place unique demands on judges, requiring them to sit as both arbiters of law and as finders of fact." *State v. Read*, 147 Wn.2d 238, 245, 53 P.3d 26 (2002). It is frequently noted that "'[i]n bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.'" *Read*, 147 Wn.2d at 245 (quoting *Harris v. Rivera*, 454 U.S. 339, 346, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981)). In a bench trial, "'it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not.'" *Read*, 147 Wn.2d at 245 (quoting *Builders Steel Co. v. Comm'r of Internal Revenue*, 179 F.2d 377, 379 (8th Cir.1950)).

B.     The Trial Court Committed Harmless Error

Bakke argues that he had the right to appear in court unshackled. He contends that he requested to be unshackled but the trial court declined. As a threshold issue, it is clear that Bakke

10

did not request to be unshackled. Through counsel, he stated that he had no objection to the shackles, but wanted the handcuffs removed to take notes.[1]

As a secondary threshold issue, the State asserts that this issue was not preserved for appeal, Bakke should have argued RAP 2.5(a)(3) in his brief, and Bakke cannot show manifest constitutional error. To establish manifest error, an appellant must demonstrate actual prejudice, which requires a plausible showing that the asserted error had practical and identifiable consequences in the trial. *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). Although Bakke does not present his arguments under the specified umbrella of RAP 2.5(a)(3), he does make this showing. Bakke argues that the error constituted a constitutional violation and makes a plausible showing that by requiring him to be restrained throughout the trial, his ability to participate in his defense was restricted. We will therefore consider the issue. However, even "'[i]f an error of constitutional magnitude is manifest, it may nevertheless be harmless.'" *State v. Grimes*, 165 Wn. App. 172, 180, 267 P.3d 454 (2011) (quoting *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011)).

Bakke contends that the trial court failed to hold a hearing and did not make any findings to justify the restraints. Further, he argues that the court did not consider less restrictive alternatives. This issue has some merit, though not for the reasons communicated in Bakke's brief. Bakke's attorney raised the issue prior to opening statements and the court heard argument from the parties. Therefore, the court did in fact hold a very brief hearing. Additionally, the court issued

---

[1] The State presents an "invited error" argument. The invited error doctrine precludes a criminal defendant from seeking appellate review of an error he helped create, even when the alleged error involves constitutional rights. *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). We then consider whether the defendant affirmatively assented to the error, materially contributed to it, or benefited from it. *Mercado*, 181 Wn. App. at 630. Here, we conclude that while defense counsel may have muddied the issue, the conduct did not relieve the trial court of its obligation to hold a hearing and enter findings to justify the use of restraints.

a ruling in which it articulated why the restraints were a safety issue and why the possibility of prejudicing a jury was moot. Finally, the court was asked to remove Bakke's handcuffs, yet it found that Bakke should remain restrained; therefore, the court did consider at least one less restrictive alternative.

However, although the court engaged in all three steps, the court abused its discretion because its findings were not sufficient to justify the restraints. *See Damon*, 144 Wn.2d at 691-92. The court did not clearly base its decision on evidence indicating Bakke posed an imminent risk of escape, intended to injure someone in the courtroom, or would not behave with decorum. *See Finch*, 137 Wn.2d at 850. We conclude the trial court erred.

Despite the error, Bakke has not and cannot show the use of the restraints "substantially affected the trial court's fact finding." *E.J.Y.*, 113 Wn. App. at 952. Bakke specifically argues that the shackles inhibited his ability to assist his counsel, his ability to testify, and offended the dignity of the judicial process. These contentions are not supported by the record. Bakke participated in his trial by testifying in both the defense case-in-chief and in rebuttal, and reenacted the incident between himself and Topaum. Additionally, the trial court's findings and conclusions were supported by substantial evidence, including testimony of officers on the scene and Bakke's own consistent testimony. Bakke also admitted that the methamphetamine was his own and that the phone and other property in his possession were not his. Furthermore, because Bakke's trial occurred without a jury, it is clear that the trial judge knew he was in custody and the risk of prejudice caused by the restraints was greatly reduced. *See E.J.Y.*, 113 Wn. App. at 952. Therefore, even though the trial judge did not make the factual findings to support the use of restraints, we conclude that the error was harmless. *See E.J.Y.*, 113 Wn. App. at 952.

### III. LEGAL FINANCIAL OBLIGATIONS

Bakke argues that the trial court erred by not conducting a particularized inquiry before imposing LFOs. Bakke did not object during sentencing to preserve the issue for appeal and therefore, we do not consider it here.

"Unpreserved LFO errors do not command review as a matter of right." *State v. Blazina*, 182 Wn.2d 827, 833, 344 P.3d 680 (2015). In *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492 (2013), we exercised our discretion and declined to review an unpreserved LFO claim. The Supreme Court upheld our decision. *Blazina*, 182 Wn.2d at 830. Bakke argues that the court imposed LFOs on him despite the absence of any indication he could pay them.[2] However, he did not challenge the imposition of LFOs. Bakke's sentencing hearing took place on September 19, 2014, more than a year after our decision in *Blazina*; therefore, he had notice that he must object in the trial court to preserve the claim for appeal. *State v. Lyle*, 188 Wn. App. 848, 852, 355 P.3d 327 (2015). We decline to review this issue.

### IV. STATEMENT OF ADDITIONAL GROUNDS

Bakke also filed a SAG in which he appears to assert insufficient evidence existed to convict him of assault in the third degree because Topaum did not make a report of the assault at a hospital, did not take photos of his arm, and did not provide a witness. Further, he states that Topaum's assertion that Bakke kicked him was hearsay. We disagree.

In reviewing a claim of insufficient evidence, we examine the evidence in the light most favorable to the State, reversing only where no rational trier of fact could find that all elements of

---

[2] Bakke does not distinguish between mandatory and discretionary LFOs. As Washington courts have previously noted, this distinction is important because the legislature has divested courts of the discretion to consider a defendant's ability to pay when imposing mandatory LFOs. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013).

the crime were proved beyond a reasonable doubt. *State v. Montgomery*, 163 Wn.2d 577, 586, 183 P.3d 267 (2008). A claim of insufficiency admits the truth of the State's evidence and all reasonably drawn inferences. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

We defer to the trier of fact to resolve conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997). Circumstantial evidence is accorded equal weight as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

RCW 9A.36.031(1)(g) states that "[a] person is guilty of assault in the third degree if he . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." "Assault" is not defined in the criminal code and therefore, Washington courts turn to common law. *Elmi*, 166 Wn.2d at 215. There are three recognized definitions of assault: (1) an unlawful touching; (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it; and (3) putting another in apprehension of harm. *Elmi*, 166 Wn.2d at 215.

The State was not required to supply a hospital record or photos of the injury. Instead, the State must have proved beyond a reasonable doubt that Bakke assaulted a law enforcement officer, during the commission of his duties, by either an unlawful touching, an attempt to inflict bodily harm, or putting the officer in apprehension of harm. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009).

The trial court found beyond a reasonable doubt that Bakke "assaulted Tom Topaum by kicking him in the right shoulder." CP at 19. This finding was supported by testimony from Topaum, Cusick, and Bakke himself. Bakke's testimony was overall consistent with the officers', with the exception that he simply denied kicking Topaum on purpose or noticing that he made

14

contact. Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences, we conclude that a reasonable fact finder could find Bakke guilty beyond a reasonable doubt.

Finally, the State did provide witnesses, and Topaum's own testimony about being kicked is not hearsay. *See* ER 801. Cusick testified that she saw the incident and Topaum testified about being kicked and feeling his shoulder pop out of socket. We conclude there was sufficient evidence to support Bakke's assault in the third degree conviction.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Bjorgen, A.C.J.

Sutton, J.

15