[No. 37860-4-II.   Division Two.   January 26, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. RHONDA DAWNEL HOS, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Juelie B. Dalzell, Prosecuting Attorney,* and *Thomas A. Brotherton, Deputy,* for respondent.

¶1 Hunt, J. — Rhonda Hos appeals her bench trial conviction for unlawful possession of methamphetamine. She argues that the trial court (1) erred in denying her motion to suppress evidence obtained in violation of the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution and (2) violated her right to a jury trial by proceeding to a bench trial without her personal waiver. We affirm the trial court's denial of Hos's motion to suppress, reverse her bench trial

conviction for lack of a proper jury trial waiver, and remand for a new trial.

## FACTS

### I. Methamphetamine Possession

¶2 On September 20, 2007, Child Protective Services (CPS) social worker Nicole Edwards asked law enforcement to accompany her to Rhonda Hos's residence to interview Hos about a CPS referral concerning her daughter. Jefferson County Sheriff's Deputy Brian Post knocked loudly on Hos's front door several times but received no response. He looked through a window near the front door and observed Hos sitting on a couch just a few feet from the door with her eyes closed and her head resting on her chest. He could not tell whether she was breathing; she seemed to be either unconscious or dead. Edwards also looked through the window and could not tell whether Hos was breathing. Post "pounded on the door hard to see if [he] could get a response," looked back through the window, and observed that Hos had not made any movements at all. Report of Proceedings (RP) at 54.

¶3 Having observed no response to his pounding, Post opened the unlocked front door and yelled Hos's name. When he received no response, he entered the house, yelling, " 'Sheriff's office,' " as he approached Hos. RP at 54. Hos "slowly raised her head and looked around bleary eyed," RP at 55; she appeared to Post to be intoxicated. Next to Hos on the couch, Post noticed a butane torch of the type that methamphetamine users commonly use. Post explained to Hos that he was there with Edwards from CPS.

¶4 Edwards and Hos had a brief conversation, during which Edwards asked if she (Edwards) could look around the house and take pictures. Hos agreed that Edwards could look around, but Hos declined Edwards' invitation to accompany her.

¶5 Post remained with Hos while Edwards looked around the house. Post noticed that Hos's pockets were

"quite full with items," asked her if there was anything in her pockets he should be worried about, and then asked if she would empty her pockets. RP at 57. In response, Hos said she would empty her pockets and patted her pockets, first while sitting, then while standing. As she stood up, Post observed a methamphetamine pipe through an opening in her coat pocket, which became visible when she stood up and turned toward Post. He then arrested her for possession of drug paraphernalia, searched her incident to the arrest, and found a small purse in her pocket. This purse contained methamphetamine.

## II. PROCEDURE

¶6 The State charged Hos with one count of possession of a controlled substance (methamphetamine) and one count of third degree criminal mistreatment. Hos moved to suppress all evidence Post found following his warrantless entry into her house.

¶7 At the suppression hearing, Post and Edwards testified as set out above. Post also testified that (1) he entered Hos's home because, after seeing her inert body through the window, he had serious concerns for her health, RP at 60; and (2) if the door had not been unlocked when he tried the knob, he would have "kicked the door in" to render aid. RP at 54. Edwards also testified that she was concerned about Hos's health and that if she (Edwards) had been alone at Hos's house, she would have "contacted law enforcement . . . and requested that they . . . and a paramedic respond." RP at 38.

¶8 The trial court denied Hos's motion to suppress. It concluded that (1) the circumstances surrounding Post's entry met the medical emergency exception to the warrant requirement; (2) Hos impliedly consented to Post's remaining in the house after it became apparent there was not a medical emergency; (3) the methamphetamine pipe in Hos's pocket was in plain view; and (4) Post found the methamphetamine in Hos's pocket during a lawful search incident to her arrest for possession of the pipe.

¶9 At a hearing before a superior court commissioner, sitting as a pro tempore superior court judge, Hos's attorney explained that Hos's

> intent [was] to ask the Court to review . . . a couple of documents on stipulated facts for a bench trial. It's Ms. Hos' intent to appeal a pre-trial suppression order denying her motion, and this is the most efficient way to get that up on appeal.

RP at 100. Hos did not sign a jury trial waiver, and there is none included in the record on appeal. The pro tempore judge did not inquire of Hos on the record about whether she had discussed waiving a jury with defense counsel or whether she understood and agreed with defense counsel's intent to proceed to a bench trial on stipulated facts in lieu of a jury trial.[1]

¶10 Hos went to trial without a jury before the court commissioner sitting pro tempore as a superior court judge. The commissioner reviewed the stipulated documents, found Hos guilty of the possession of a controlled substance charge, and dismissed the criminal mistreatment charge, with the State's agreement.[2]

¶11 Hos appeals.

---

[1] The record contains only a brief colloquy between defense counsel and the commissioner about Hos's right to a trial before an elected judge instead of a pro tempore judge, such as the commissioner. When the commissioner noted that he would need a pro tempore waiver if he conducted the bench trial, Hos's counsel explained to her that she did not have to accept the commissioner as the trial judge because the commissioner was not an elected judge, as follows:

> [Defense Counsel]: Yeah, yeah. It's—I—let me explain that to Ms. Hos. He's not an elected judge. He's an attorney sitting in as a pro tem. You don't have to accept him. My suggestion is we do. (inaudible) that's okay. Are you cool with that? She'll accept, Your Honor.

RP at 100. The record contains no independent colloquy between the trial court and Hos about whether she understood this right and knowingly waived it. Just as there is no written jury trial waiver, the record contains no written pro tempore waiver of Hos's right to trial by an elected judge.

[2] The State had earlier agreed to dismiss the criminal mistreatment count in exchange for a stipulated "finding" on the possession count at a bench trial. RP at 101-02.

## ANALYSIS

### I. WARRANTLESS COMMUNITY CARETAKING FUNCTION ENTRY

¶12 Hos first argues that the trial court erred when it found that Post did not violate her right to privacy under article I, section 7 of the Washington State Constitution and denied her motion to suppress the evidence obtained following the warrantless entry into her home. More specifically, she contends that (1) the "community caretaking" exception to the warrant requirement is narrower under article I, section 7 than under the Fourth Amendment to the United States Constitution; (2) to fit under the article I, section 7 "community caretaking" exception, Post was required to use the "least intrusive means" to check on her welfare, Br. of Appellant at 9; (3) Post did not use the "least intrusive means," Br. of Appellant at 12; and (4) therefore, the trial court should have suppressed the evidence Post seized following his warrantless entry.[3] This argument fails.

### A. Standard of Review

¶13 We review de novo the trial court's conclusions of law following a suppression hearing. *State v. Williams*, 148 Wn. App. 678, 683, 201 P.3d 371 (2009). Here, the trial court apparently did not enter written findings of fact or conclusions of law,[4] but it did make oral conclusions that are sufficient for our review of the issues on appeal.

¶14 The Fourth Amendment to the United States Constitution[5] and article I, section 7 of the Washington

---

[3] Hos explicitly limits her challenge on appeal to Post's initial entry into the home. She does not challenge her consent to Post's remaining in the house, his discovery of the glass pipe under the consent and plain view exceptions, or his search of her person incident to her arrest and seizure of methamphetamine in her purse.

[4] Hos does not argue that the trial court erred in failing to enter written findings and conclusions.

[5] The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

State Constitution[6] protect similar privacy interests. *State v. Eisfeldt*, 163 Wn.2d 628, 634-35, 185 P.3d 580 (2008). But article I, section 7 "requires a warrant before any search, reasonable or not," whereas the Fourth Amendment "leav[es] individuals subject to any manner of warrantless, but reasonable, searches." *Eisfeldt*, 163 Wn.2d at 634.[7]

¶15 There are, however, exceptions to the warrant requirement under both the Fourth Amendment and article I, section 7. *State v. Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004). The State bears the burden of showing that an exception applies. *Thompson*, 151 Wn.2d at 802. One such exception is the community caretaking function, which allows a police officer to invade constitutionally protected privacy rights when necessary to render aid or assistance or to make routine checks on health and safety. *Thompson*, 151 Wn.2d at 802. We hold that the State met its burden to show that this exception applied here.

## B. Community Caretaking Exception

■ ¶16 The community caretaking exception, which is detached from criminal investigation, applies only when

"(1) the officer subjectively believed that someone likely needed assistance for health and safety reasons; (2) a reasonable person in the same situation would similarly believe that there

---

warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[6] Article I, section 7 provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Wash. Const. art. I, § 7.

[7] *See also State v. Parker*, 139 Wn.2d 486, 493 n.2, 987 P.2d 73 (1999) (principles of state constitutional jurisprudence apply to search and seizure issue because "[i]t is already well established that article I, section 7 of our state constitution provides to individuals broader protection against search and seizure than does the Fourth Amendment" (citing *State v. White*, 135 Wn.2d 761, 769, 958 P.2d 982 (1998))).

was a need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place searched."

*State v. Kinzy*, 141 Wn.2d 373, 386-87, 5 P.3d 668 (2000).[8]

¶17 Although the Washington Supreme Court has not explicitly held that community caretaking is a valid exception to the warrant requirement under article I, section 7,[9] we have upheld the admission of evidence obtained during a warrantless search based on the community caretaking exception where the appellant argued that the search violated article I, section 7. *State v. Johnson*, 104 Wn. App. 409, 415-18, 16 P.3d 680, *review denied*, 143 Wn.2d 1024 (2001). And in the context of a warrantless entry into a residence, we recently held that, under article I, section 7, "[t]he first factor requires officers to subjectively believe that they need to enter the residence to provide medical assistance." *Williams*, 148 Wn. App. at 685. In reviewing the reasonableness of such an entry, however, courts should balance the individual's privacy interests against the public's interest in having the police perform their community caretaking function. *State v. Acrey*, 148 Wn.2d 738, 750, 64 P.3d 594 (2003) (quoting *Kinzy*, 141 Wn.2d at 387).

■ ■ ¶18 Here, Post's entry into Hos's residence falls within the community caretaking function, which we adopt as an exception under article I, section 7, and apply here. First, Post had a subjective belief that Hos was in need of medical assistance and that it would be necessary to enter the house to provide that assistance. When he looked into her house, after receiving no response to his repeated knocks and pounding on her front door, he could not tell whether she was breathing, and she appeared to be either unconscious or dead.

¶19 Second, the trial court found that Post's concern for Hos's health was "legitimate," especially in light of

---

[8] (Quoting *State v. Menz*, 75 Wn. App. 351, 354, 880 P.2d 48 (1994), *review denied*, 125 Wn.2d 1021 (1995)).

[9] *Kinzy*, 141 Wn.2d at 387 n.38 ("While countenancing the community caretaking function exception . . . , this Court has not *explicitly* stated the exception applies to article I, section 7 of the Washington Constitution.").

Edwards' similar observations and similar concerns about Hos's apparent lack of breathing. RP at 74. Thus, although the trial court did not expressly utter the word "reasonable," the findings it did articulate support an implicit finding that a reasonable person would have had similar concerns about Hos's apparent need for immediate medical attention. RP at 73-75.

¶20 Third, because Post and Edwards observed Hos, apparently not breathing, inside her house, there was a reasonable basis for associating Hos's home with her need for assistance. Furthermore, Post's entry was not a pretext to gather evidence. Rather, it was an attempt to ascertain whether Hos needed critical medical attention immediately.

## C. Least Intrusive Means Not Required

¶21 Hos further contends that the trial court should also have suppressed the evidence because Post did not use the "least intrusive means" of checking on her welfare, such as shouting through a broken window rather than through the open door.[10] Br. of Appellant at 12. Hos cites several cases that she contends "suggest" that police officers acting in a community caretaking function must use the "least intrusive means." Br. of Appellant at 10. But none of these cases interpret the community caretaking exception to the warrant requirement.[11] Furthermore, the Washington cases

---

[10] Hos notes:

The record does not establish that either [Post or Edwards] considered shouting through the broken window at the front of the house, shouting or making large motions at the window near the door, tapping on the window near the door, telephoning into the house, or taking any other actions to get [Hos's] attention.

Br. of Appellant at 12.

[11] *See York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 299, 178 P.3d 995 (2008) (declining to recognize "special needs" exception to warrant requirement and holding warrantless and suspicionless random drug testing of student athletes violates Washington State Constitution); *Eisfeldt*, 163 Wn.2d at 638 (rejecting private search doctrine, under which warrant is not required where officer's search does not exceed that of private citizen's earlier search); *State v. Day*, 161 Wn.2d 889, 898, 168 P.3d 1265 (2007) (holding suspected violation of a civil parking infraction is not grounds for a *Terry* stop) (*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)); *In re Pers. Restraint of*

that do interpret the community caretaking exception do not require the officer to use the least intrusive means, contrary to Hos's assertion. *See, e.g.*, *Johnson*, 104 Wn. App. at 415.

¶22 We hold that the community caretaking exception authorized Post's warrantless entry into Hos's house. Therefore, the trial court did not err in denying her motion to suppress the evidence Post seized after entering her house.

## II. WAIVER OF JURY TRIAL

¶23 Hos next argues that we should reverse her conviction and remand for a new trial because she neither expressly waived on the record her constitutional right to a jury trial nor personally approved, either orally or in writing, *her attorney's* implied waiver of her jury trial right. The State counters that (1) Hos ratified her attorney's oral waiver of her jury trial right by failing to object to two discussions on the record[12] and (2) Hos failed to preserve the error for appeal because she did not call the error to the trial court's attention. The State's argument fails. We agree with Hos.

## A. Waiver

¶24 A criminal defendant may waive her constitutional right to a jury trial, as long as the waiver of that right is voluntary, knowing, and intelligent. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). The State bears the burden of establishing the validity of the defendant's jury trial waiver, and we must indulge every reason-

---

*Maxfield*, 133 Wn.2d 332, 344, 945 P.2d 196 (1997) (holding appellants had protected privacy interest in public utility records); *State v. Boland*, 115 Wn.2d 571, 578, 800 P.2d 1112 (1990) (holding collection of defendant's garbage was unreasonable intrusion).

[12] At an earlier hearing, before the bench trial on stipulated facts, the prosecutor referenced negotiations between Hos and the State that involved a stipulated facts bench trial. RP at 86. But the record before us contains no mention of either Hos or her attorney saying anything about Hos's waiving her constitutional right to a jury trial.

250

able presumption against such waiver, absent a sufficient record. *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979). We review the validity of a defendant's jury trial waiver de novo. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007).

## B. CrR 6.1(a)

¶25 CrR 6.1(a) requires the defendant's jury trial waiver to be in writing.[13] But CrR 6.1(a) is an evidentiary procedural requirement, not a constitutional requirement. Thus, failure to comply with CrR 6.1(a)'s writing requirements does not warrant reversal where the record is otherwise sufficient to show a valid waiver under the rule. *Wicke*, 91 Wn.2d at 644; *see also State v. Wiley*, 26 Wn. App. 422, 427 n.1, 613 P.2d 549 (1980).

¶26 The record shows that Hos apparently acquiesced in her attorney's representation that she agreed to proceed to a bench trial on stipulated facts. Assuming, without deciding, that this representation, unaccompanied by a written waiver, satisfied CrR 6.1(a), our inquiry does not end. In addition to CrR 6.1(a) waiver standards, we must also determine whether the record supports Hos's waiver of her constitutional right to a jury trial, applying constitutional waiver standards.

## C. Constitutional Right to Trial by Jury

¶27 To be sufficient, the record must contain the defendant's personal expression of waiver; counsel's waiver on the defendant's behalf is not sufficient. *Wicke*, 91 Wn.2d at 644.[14] Our Supreme Court upheld the Court of Appeals'

---

[13] CrR 6.1(a) provides, "Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court."

[14] Agreeing with Wicke's arguments on appeal, our Supreme Court reasoned:

[T]he present record is inadequate under current United States Supreme Court standards to demonstrate a valid waiver of the constitutional right to a jury trial.

reversal of Wicke's conviction following a bench trial because, although Wicke's trial counsel had stated on the record that Wicke waived his right to a jury trial, the record did not contain Wicke's personal expression of such jury trial waiver. *Wicke*, 91 Wn.2d at 644. Wicke had stood beside his counsel, without objection, as counsel orally waived a jury trial. *Wicke*, 91 Wn.2d at 641. But the trial court did not question Wicke about whether he had discussed a jury waiver with defense counsel and whether he had agreed to the waiver; nor did Wicke file a written jury trial waiver under CrR 6.1(a). *Wicke*, 91 Wn.2d at 641.

¶28 On appeal, Wicke did not claim that defense counsel was ineffective or that he (Wicke) had disagreed with counsel's waiver of his jury trial right. *Wicke*, 91 Wn.2d at 644. Nonetheless, holding that these circumstances required reversal, the Supreme Court noted:

> [A]lthough we may deem it implicit that Wicke validly waived his right to a trial by jury, the record we have before us does not demonstrate this fact to the extent of the constitutional standard seemingly demanded by the United States Supreme Court and assuredly demanded in other jurisdictions.

*Wicke*, 91 Wn.2d at 645.

¶29 At the beginning of the stipulated bench trial, Hos's attorney informed the trial court, in Hos's presence, that Hos's

> intent [was] to ask the Court to review . . . a couple of documents on stipulated facts for a bench trial. It's Ms. Hos' intent to appeal a pre-trial suppression order denying her motion, and this is the most efficient way to get that up on appeal.

RP at 100. But here, as in *Wicke*, the record does not contain Hos's personal expression waiving her right to a jury trial.

---

In response to questions from the bench, Wicke's counsel asserted that waiver of a fundamental right to trial by jury is personal to the defendant and cannot be effected by counsel, even though a stipulation is made in defendant's presence in open court. He argued that only the defendant can validly waive the constitutional right to a jury trial in a criminal case. *Wicke*, 91 Wn.2d at 644.

Hos did not sign a written jury trial waiver. Nor did the trial court question Hos on the record to determine whether she knowingly, intelligently, and voluntarily waived her right to a jury trial, or even whether she had discussed the issue with her defense counsel or understood what rights she was waiving.[15] Because the record lacks Hos's personal expression of waiver of her constitutional right to a jury trial, *Wicke* requires that we reverse her conviction and remand for a new trial.

¶30 We affirm the trial court's denial of Hos's motion to suppress, reverse her conviction, and remand for a new trial.

PENOYAR, A.C.J., and QUINN-BRINTNALL, J., concur.

Review denied at 169 Wn.2d 1008 (2010).

---

[15] Cf. *Wiley*, 26 Wn. App. at 429, in which Division One of this court excused procedural noncompliance with CrR 6.1(a). But, unlike the facts here, (1) the trial court had asked Wiley directly whether he was willing to forgo a jury trial, to which he replied "yes" and (2) Wiley ratified this oral waiver by subsequently executing a written jury trial waiver. *Wiley*, 26 Wn. App. at 429.