FILED
COURT OF APPEALS
DIVISION II

2013 APR 16 AM 9: 15

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43278-1-II |
| Respondent, | |
| v. | |
| QUISHANA NICOLE BLUNT, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, P.J. — Quishana Nicole Blunt appeals her bench trial conviction for unlawful possession of methamphetamine. She argues that the trial court should have granted her motion to suppress the evidence because it was the fruit of an illegal warrantless search and seizure. Holding that the evidence was admissible under the community caretaking exception to the warrant requirement, we affirm.

## FACTS

Because Blunt does not assign error to the following CrR 3.6 hearing findings of fact, they are verities on appeal,[1] and we rely on them as the facts of the case:

---

[1] *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994); *State v. Picard*, 90 Wn. App. 890, 896, 954 P.2d 336, *review denied*, 136 Wn.2d 1021 (1998); RAP 10.3(g).

II.

That on November 7, 2010, Washington State Patrol Trooper Kearsing effected a traffic stop of a van with license number 896SKW because the van had no taillights during a time of darkness.

III.

That Trooper Kearsing contacted the driver of the van, Herod Telusnord, from the passenger side of the vehicle. The driver provided his identification and Trooper Kearsing learned that Mr. Telusnord's license was suspended in the third degree.

IV.

That Trooper Kearsing informed Mr. Telusnord that he could not drive the vehicle. The passenger, Quishana Blunt, at that point interjected and said she could drive the van and that it was her mother's van. Trooper Kearsing asked Ms. Blunt if she had a valid license and Ms. Blunt replied "yes" and handed over her license. Trooper Kearsing then took the license back to her patrol vehicle to run the name. . . .

V.

That the name on the vehicle's registration matched Ms. Blunt's last name, confirming that it was owned by the Defendant's mother and Ms. Blunt presumably had permission to drive the van.

VI.

That Trooper Kearsing learned that Ms. Blunt also had a suspended license and had a confirmed warrant for her arrest for Driving While License Suspended (DWLS) Third Degree. Trooper Kearsing took Ms. Blunt into custody on the warrant. Trooper Kearsing testified it was her policy to always arrest on warrants but not to always arrest on DWLS offenses.

VII.

That Trooper Kearsing searched Ms. Blunt incident to her arrest and discovered a small baggie with white residue . . . in Ms. Blunt's pocket (subsequent lab tests showed the substance to be methamphetamine). The Trooper then arrested Ms. Blunt for Possession of a Controlled Substance.

Clerk's Papers (CP) at 6-7.

The trial court also entered the following relevant CrR 3.6 hearing conclusions of law:

II.

That the holding of *State v. Mennegar*, 114 Wn.2d 304, 787 P.2d 1347 (1990)[2] remains controlling authority for the proposition that law enforcement may determine if a passenger has a valid driver's license before turning over a vehicle to that person as part of their community caretaking function.

. . . .

---

[2] *Overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 645, 870 P.3d 313 (1994).

2

VI.

That Trooper Kearsing had a legitimate independent basis to request the Defendant's identification in conformance with *State v. Rankin*, 151 Wn.2d 689, 92 P.3d 202 (2004) and *State v. Brown*, 154 Wn.2d 787, 117 P.3d 336 (2005). Trooper Kearsing validly exercised her community caretaking function to ensure she was not turning the vehicle over to a driver who was not licensed. While a police officer may not ask someone, at random, to prove they have a valid license prior to getting into an automobile, the situation confronted by Trooper Kearsing during this nighttime traffic stop authorized her to conduct a heightened inquiry so as ensure anyone driving this vehicle away from the scene of the stop was indeed a validly licensed driver.

CP at 8-9. Blunt assigns error to Conclusion of Law (CL) II and CL VI.

Blunt agreed to have the court try her on stipulated facts. The trial court found her guilty of unlawful possession of methamphetamine. Blunt appeals.[3]

ANALYSIS

Blunt argues that (1) Trooper Kearsing conducted an illegal warrantless search when she took Blunt's driver's license to check its status and for warrants;[4] and (2) article I, section 7 of the Washington State Constitution generally prohibits a law enforcement officer from requesting the identification of passengers in a vehicle stopped by the officer. Blunt cites *State v. Eisfeldt*, 163 Wn.2d 628, 635, 185 P.3d 580 (2008) for the first argument and *Rankin*, 151 Wn.2d at 699-700 for the second.

---

[3] Our court commissioner initially considered Blunt's appeal as a motion on the merits under RAP 18.14 and then transferred it to a panel of judges.

[4] Blunt asserts that Trooper Kearsing took her driver's license and conducted a license and warrants check "without her permission." Br. of Appellant at 2. This assertion, however, is contrary to the trial court's undisputed finding of fact IV that when "Trooper Kearsing asked Ms. Blunt if she had a valid license," "Ms. Blunt replied 'yes' and handed over her license." CP at 6-7. This finding does *not* include that the trooper took Blunt's license "without her permission." Taking the trial court's unchallenged finding as a verity on appeal, we disregard Blunt's contrary assertion in her brief.

The State responds that the trial court correctly relied on *Mennegar*, 114 Wn.2d at 309, in which our Supreme Court held:

> As part of a police officer's "community caretaking function", an officer may ask a passenger if the passenger wishes to drive an intoxicated driver's vehicle from the scene. If the passenger consents, the officer may appropriately determine if the passenger has a valid driver's license prior to allowing the passenger to drive the intoxicated passenger's vehicle.

As Blunt notes, the Supreme Court decided *Mennegar* under the Fourth Amendment to the United States Constitution.[5] More recently, however, we filed *State v. Hos*, 154 Wn. App. 238, 247, 225 P.3d 389, *review denied*, 169 Wn.2d 1008 (2010), in which we held that the community caretaking function is also an exception to the warrant requirement under article I, section 7.[6]

The following undisputed facts support the trial court's conclusions of law here: Because the driver of the van had a suspended license, Trooper Kearsing could not allow him to drive the van away from the scene of the traffic stop. Blunt volunteered to drive the van, which she said belonged to her mother. Before allowing Blunt to drive the van away, Kearsing asked Blunt whether she had a valid license. Blunt replied, "[Y]es,"[7] and handed her license to Kearsing. Kearsing's inquiry as to whether Blunt had a valid driver's license was independently and legitimately based on public safety; and it was reasonable and necessary for Kearsing to take Blunt's license back to her patrol vehicle to check the status of Blunt's license to confirm that releasing the van to Blunt would be legal and safe. Kearsing learned that, although Blunt's mother owned the van, as Blunt had represented, Blunt's driver's license was also suspended and that there was an outstanding warrant for Blunt's arrest for third degree driving while license

---

[5] U.S. CONST. amend. IV.

[6] WASH. CONST. art. I, § 7.

[7] CP at 7 (Finding of Fact IV).

suspended. Kearsing arrested Blunt on the warrant, searched her incident to the arrest, and discovered a small baggie with methamphetamine residue in her pocket.

Under these circumstances, *Mennegar* and *Hos* also support the trial court's conclusions of law that (1) Trooper Kearsing's seizure of Blunt's driver's license was part of her community caretaking function; (2) thus, seizure of Blunt's driver's license did not violate the warrant requirement of either the Fourth Amendment to the United States Constitution or of article I, section 7 of the Washington State Constitution; and (3) the trial court did not err in denying Blunt's motion to suppress. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Quinn-Brintnall, J.

Bjorgen, J.